IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| and | ) |
| STATE OF DELAWARE, | ) |
| Plaintiff/Intervener, | ) |
| | ) Civil Action No. _____ |
| v. | ) |
| FORMOSA PLASTICS CORPORATION, DELAWARE, | ) |
| Defendant. | ) |

## MOTION TO FILE UNDER SEAL
## CERTAIN CONSENT DECREE APPENDICES

Plaintiff United States of America, on behalf of the United States Environmental

Protection Agency ("the United States"), and Defendant Formosa Plastics Corporation, Delaware

("Formosa"), (collectively "Movants") hereby seek leave of this Court to file under seal certain

Consent Decree appendices to be filed by the Parties. Co-plaintiff, the State of Delaware through

its Department of Natural Resources and Environmental Control (DNREC) ("Delaware"), has

represented through its counsel that it does not oppose this motion. In support of this motion,

Movants offer the following:

1. On this date, the United States and Delaware have filed Complaints alleging that

Formosa violated certain environmental statutes. Formosa denies any alleged violations.

2. On this date, the Parties will file a Consent Decree to resolve the claims stated in the

above-referenced Complaints. The Consent Decree has been negotiated by the Parties in good

faith and will avoid litigation among the Parties. Certain appendices to the Consent Decree

contain information concerning Formosa's operational processes. In order to effectuate the

Consent Decree, these appendices were required to be attached to the Consent Decree and made

an integral part thereof.

3. Formosa has determined that Appendices A, C, E, F, G, H, I, J, L and O to the above-referenced Consent Decree contain nonpublic, confidential, proprietary, and/or commercially sensitive information that, if disclosed, would work a clearly defined and serious injury to its competitive interests. The bases for Formosa's determination are attached hereto in letters from Formosa to the United States and DNREC, dated March 24, 2005 and March 30, 2005 respectively. Exhibits 1 & 2. Based on the statements set forth therein, the Movants believe that good cause exists to keep portions of these certain Consent Decree appendices under seal. The Movants have agreed that the information, if disclosed, would harm Formosa's competitive interests and should be filed under seal.

4. The Movants have prepared non-confidential summaries of the confidential appendices, which are attached hereto as Exhibit 3. Attached to the consent decree itself are redacted versions of the appendices at issue. These summaries and redacted versions of the appendices will be provided to any person requesting a copy of the Consent Decree pursuant to the notice and comment procedures followed by the United States Department of Justice, 28 C.F.R. § 50.7, and are limited to such purpose. In providing such summaries and redacted versions of the appendices, the Movants seek to keep confidential not the existence of the appendices nor the general nature of the information contained therein, but information that would, if released, work an injury to Formosa's competitive interests.

5. A District Court has inherent equitable power to keep information confidential and under seal. See, e.g., Pansy v. Borough of Stroudsburg, 23 F.3d 772, 785 (3rd Cir. 1994). Because release of the confidential appendices would work a clearly defined and serious injury to Formosa's competitive interests, and because the public in its own right, apart from the agencies of its representative governments, has no strong interest in disclosure of information concerning how Formosa, a privately held company, conducts its internal operations, good cause exists to keep certain Consent Decree appendices under seal.

Accordingly, for the reasons set forth above, the Movants respectfully request that this Court enter an Order allowing the Parties to file under seal portions of certain appendices to the Consent Decree. A proposed Order consistent with the relief sought herein is attached to this motion.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

C. Connolly (by RC)

COLM F. CONNOLLY
United States Attorney
District of Delaware

W. Hutchm (by RC)

WILLIAM A. HUTCHINS
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice

RUDOLPH CONTRERAS
Chief, Civil Division
United States Attorneys Office
District of Delaware

Counsel for the United States

ROBERT W. WHETZEL
Del. I.D. No. 2288
Richards, Layton & Finger, PA
P.O. Box 551
Wilmington, DE 19899
(302) 651-7634
whetzel@rlf.com

Counsel for Formosa

- 3 -

# EXHIBIT 1

RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
Fax (302) 651-7701
WWW.RLF.COM

ROBERT W. WHETZEL
DIRECTOR

DIRECT DIAL NUMBER
302-651-7634
Whetzel@rlf.com

March 24, 2005

**VIA FEDERAL EXPRESS**

William A. Hutchins
Environmental Enforcement Section
Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044

Re:    Formosa Plastics Corporation, Delaware

Dear Bill:

Enclosed is the Consent Decree in the above-referenced matter, which has been signed by Mr. Chou on behalf of Formosa Plastics Corporation, Delaware ("Formosa"). Formosa forwards the enclosed signature page based upon the representations by the United States and the State of Delaware that the complaints to be filed in this matter will include the claims set forth in the summaries of violations to be alleged as provided to Formosa on March 18 and March 23, 2005 (copies enclosed).

This letter will also confirm our understanding that certain appendices of the Consent Decree have been designated as "confidential" by Formosa based upon confidentiality and trade secret concerns and will be treated as Confidential Business Information under 40 CFR Part 2. When the Consent Decree is submitted to the court for lodging, the parties have agreed to file under seal all appendices that are designated as having confidential information, and to file a joint motion and/or stipulation, for approval by the Court, to confirm the confidentiality agreement.

If any of the understandings recited in this letter are inaccurate, please advise me immediately, in which event Formosa's signature page is not to be released.

Respectfully,

Robert W. Whetzel

RWW/lmg
Enclosure

RLF1-2855097-1

# EXHIBIT 2

RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION

. ONE RODNEY SQUARE

920 NORTH KING STREET

ROBERT W WHETZEL
DIRECTOR

WILMINGTON, DELAWARE 19801

(302) 651-7700

FAX (302) 651-7701

WWW.RLF COM

DIRECT DIAL NUMBER
302-651-7634
WHETZEL@RLF COM

March 30, 2005

**BY HAND**

Secretary John Hughes
Delaware Department of Natural Resources
   and Environmental Control
89 Kings Highway.
Dover, Delaware 19901

RE:    **Formosa Plastics Corporation, Delaware - Request for Confidentiality**

Dear Secretary Hughes:

The United States Environmental Protection Agency ("EPA"), the Delaware Department of Natural Resources and Environmental Control ("DNREC") and Formosa Plastics Corporation, Delaware ("Formosa") have agreed to enter into a Consent Decree in order to resolve assertions made by EPA and DNREC regarding statutory and regulatory violations. This Consent Decree will be lodged with the United States District Court for the District of Delaware for court approval.

Over the course of the Consent Decree negotiations, Formosa has developed, or substantially revised, operational, training, and response plans and procedures utilized at the site These plans and procedures address the day-to-day processes and operations of Formosa and incorporate the facility's process and technical knowledge. Additionally, Formosa has developed detailed documents containing equipment lists and descriptions, including a project that it will implement at its facility pertaining to its reactor design and operation. These plans, procedures, lists and projects are incorporated as part of the Consent Decree as appendices and will be utilized by Formosa after the court's approval thereof. In addition, after the termination of the Consent Decree, certain of the appendices will be attached to an agreement between DNREC and Formosa to memorialize certain obligations of Formosa.

The parties have agreed that certain of the appendices to the Consent Decree containing confidential information will be filed under seal with the court. These appendices are the Operator Training Program – RVCM Reduction (Appendix A); Vinyl Chloride Continuous Monitoring System Program (Appendix C); Manufacturer's Recommendations for Cooling Equipment (Appendix D); Waste Analysis and Management Plan (Appendix E); Hazardous Materials Contingency Plan (Appendix F); Lab Technician Training Program (Appendix G), TRI Estimation Method (Appendix H), E, H & S Incident Management Excerpt (Appendix I),

March 30, 2005
Page 2

Supplemental Environmental Project (Appendix J); the SPCC Plan (Appendix L), and PVC Solids Management Plan (Appendix O) (collectively "Confidential Procedures"). Formosa requests that the Confidential Procedures be held as confidential by DNREC

The Confidential Procedures, individually and collectively, include information that allows Formosa to attain and hold a competitive advantage over others. The Confidential Procedures contain descriptions of the process used by Formosa to manufacture PVC resin, specific descriptions of the equipment at the facility, process knowledge and operational procedures, and information pertaining to security practices at the facility.

Release of this information to the public would place Formosa at a competitive disadvantage as other manufacturers could determine the production capabilities and technical aspects of its operations that enable it to compete. Certain of Confidential Procedures have been developed by Formosa outside of any statutory or regulatory requirements and permitting a competitor to have access to such documents would substantially harm Formosa by allowing its systems to be replicated. Furthermore, Formosa expended significant effort and money to develop these plans, procedures and projects in order to operate, maintain and protect its facility. Allowing a competitor to freely make use of such knowledge and systems would substantially disadvantage Formosa. Additionally, the release of security information may allow other competitors to gain knowledge of Formosa's operational processes and could have adverse environmental effects should the information be disclosed inappropriately.

While certain of the Confidential Procedures are prepared to meet the requirements of statutes or regulations, none of the specific aspects of the Confidential Procedures are required to be disclosed to the public. To the extent Formosa has shared the Confidential Procedures with EPA and DNREC during the negotiations, the information remained confidential at all times pursuant to 40 CFR Part 2, 29 Del. C. § 10002(d)(9), and under general principles protecting the confidentiality of settlement communications

Consequently, Formosa requests that Appendices A, C, D, E, F, G, H, I, J, L and O of the Consent Decree be designated as confidential pursuant to 7 Del. C Section 7903 and the DNREC Delaware Freedom of Information Act ("FOIA") Regulation, Section 6. In accordance with this request, we are providing you with the enclosed supporting affidavit, two full copies of the Consent Decree with appendices, labeled as containing confidential information for which confidential treatment is requested, as well as two redacted copies for the public file, from which the confidential information has been deleted.

Respectfully,

Robert W. Whetzel

Cc:    Kevin Maloney (cover letter only)
Enclosures

# EXHIBIT 3

**Appendix A – Operator Training Program: Non- Confidential Summary**

1.  The purpose of the operator training program is to reduce batch to batch variation of stripping operations and thereby enhance levels of RVCM reduction.

2.  All qualified stripping operators will attend a training course based on an approved power point presentation. The training is designed, inter alia, to cover techniques to lower RVCM levels and to minimize batch-to-batch variation in stripping. Annual refresher training is also to be provided.

3.  Daily records of batches exceeding a certain threshold will be maintained, including probable reasons for exceeding the threshold. These data will be used to provide feedback for operators to minimize batch variance and to revise procedures and training as appropriate.

**Appendix C – Vinyl Chloride Continuous Monitoring Program: Non-Confidential Summary.**

1.      This program calls for several gas chromatographs using a multi stream continuous sequential sampling and analysis system. Numerous monitoring locations throughout the plant are employed, having been selected to detect leaks from potential vinyl chloride leak sources.

2.      A very low level of detection for vinyl chloride, substantially below the regulatory threshold for leaks, is employed. When VCM above this low threshold is detected, alarm indicators are triggered in the area of the leak and in the control room for that area.

3.      When the alarm is activated, designated personnel investigate the area involved both visually and with detection equipment. Appropriate corrective action is taken with every effort made immediately to stop the leak. Depending on the level of the leak, more formal investigation may be conducted.

4.      Proper calibration procedures are required for (a) the vinyl chloride monitoring system and (b) the portable hydrocarbon detectors.

5.      A preventive maintenance program is specified for the Vinyl Chloride Monitoring System, including routine, scheduled inspections and routine maintenance operations.

6.      Record keeping includes process and instrumentation drawings kept up to date for all equipment in VCM service, and records of all leaks detected.

**Appendix E – Waste Analysis and Management Plan: Non-confidential Summary**

1.  The plan's purpose is to establish a uniform, reliable means of determining the constituents of waste streams, ensuring their proper classification under hazardous waste regulations, and providing for proper management of all waste determined to qualify as hazardous.

2.  The procedures of the plan apply to all solid, liquid and semi-solid wastes that are subject to regulation under Delaware hazardous waste regulations enforced in lieu of the Federal RCRA program.

3.  The plan delineates precisely the persons and units within the Facility responsible for implementation.

4.  The plan contains 18 definitions of terms used in the waste analysis and management.

5.  The plan specifies a detailed procedure for waste analysis, including:

    a.  Characteristics and constituents for which wastes must be evaluated.

    b.  Methods to be used for such evaluation.

    c.  Criteria as to when and under what circumstances a waste evaluation is required for: the waste is not part of an existing characterized waste stream; if there is doubt as to the composition of the stream; whenever a process change may affect the composition of a waste stream; abnormal operating conditions such as pit overflow. Also, all characterized waste streams must be reviewed annually for changes.

    d.  The sequence to be followed by Facility personnel when making waste determinations.

    e.  Records to be retained, including records of waste analysis (3 years), and the laboratory results or other basis for the waste characterization.

6.  The plan contains detailed requirements for hazardous waste management, including

    a.  Container selection.

    b.  Container issuance.

    c.  Container identification.

    d.  Container labels.

e.    Container filling.

f.    Container movement.

g.    Hazardous waste storage areas.

h.    Proper methods for disposal of full containers.

**Appendix F – Hazardous Materials Contingency Plan: Non-Confidential Summary.**

1.  The plan is designed as a good management practice to prevent, control and respond to spills of hazardous materials, significant materials and materials that could be characterized as hazardous waste.

2.  The plan provides prevention and control of potential spills by, inter alia, engineering controls, a mechanical integrity program, operating procedure, operator training and regular inspections.

3.  The plan lists facilities and areas of the plant that (i) have been engineered to minimize the risk of spills, and (ii) should be regularly monitored and maintained to avoid spills. It also identifies procedures to be implemented to prevent spills.

4.  The plan designates specific persons to be the Facility Coordinator and the Emergency Coordinator, and assigns duties to each.

5.  The plan describes in detail various scenarios for possible spills and specifies control techniques to be used for each. The scenarios covered include:

    a.  Spill or discharge of vinyl acetate.

    b.  Spill or discharge of sodium hydroxide.

    c.  Spill or discharge of sulfuric acid.

    d.  Spill or discharge of product latex, which contains sufficient levels of vinyl chloride to be of concern.

    e.  Spill or discharge of water that has come in contact with vinyl chloride monomer.

6.  The plan lists materials and equipment for use in controlling spills and indicates where they are located.

**Appendix G – Lab Technician Training Program Non-Confidential Summary**

1.   The purpose of the Lab Technician Training Program is to instruct lab technicians in the procedures used to conduct analysis in compliance with the Vinyl Chloride NESHAP.

2.   All lab technicians will attend a training course based on an approved power point presentation. The training is designed, inter alia, to proper use of Method 107 and instrument calibration. Annual refresher training is also to be provided.

3.   Records will be maintained to assure quality control of instrumentation and compliance with the procedures. The records will also be used to improve, modify and update lab procedures and change the Lab Technician Training Program as necessary.

4.   New lab technicians will undergo the training as part of the qualification for all new lab technicians.

**Appendix H - Emergency Planning and Community Right-to-Know Act (EPCRA) -Section 313 Estimation Method for Vinyl Chloride Monomer (VCM) and Vinyl Acetate Monomer**

1.      The purpose of Appendix H is to complete EPA Form R (OMB Number 2070-0093) for VCM and VAM, air emissions estimation,

        a. employing a material balance approach

        b. using readily available data, engineering calculations and best engineering judgment.

2.      Emission amounts shall be determined for each stack, fugitive and/or non point source.

3.      The calculation method will not use adjustment factors which may result in a higher stack emission than the actual value.

**Appendix I - Work Instruction for Non-Compliance and Permit Deviation Reporting**

1.     The Work Instruction for Non-Compliance and Permit Deviation Reporting describes the procedure employees at Formosa Delaware City will follow when a non-compliant release, including vinyl chloride monomer (VCM), occurs.

2.     The Work Instruction for Non-Compliance and Permit Deviation Reporting sets forth the following procedures:

   a. reporting non-compliant releases in excess of the reportable quantity;

   b. reporting non-compliant releases of unknown quantity;

   c. reporting requirements applicable to all releases;

   d. incident number assignment;

   e. investigation of non-compliant releases;

   f. compilation and distribution of the incident investigation report; and

   g. implementation, documentation and reports of preventive action.

**Appendix J - Supplemental Environmental Project**
**Formosa Delaware City Reactor Valve Control**

1.  Formosa Delaware City will replace manual controlled valves used during the PVC manufacturing process with computer controlled automated valves. The Formosa Delaware City will install new valves, upgrade existing valves, install instrumentation, as well as computer hardware and software to automate the valves in both of its plants at the Facility.

2.  The valve automation project is estimated to reduce vinyl chloride emissions by approximately 100 pounds per year after installation.

3.  The Supplemental Environmental Project will cost $842,847.00 and will take two years to complete.

**Appendix L – SPCC Plan: Non-confidential Summary.**

1.     This Spill Prevention, Control, Containment and Countermeasures Plan is designed to meet the requirements for such plans found at 40 C.F.R. § 112.7.

2.     The plan defines the persons responsible for its implementation, particularly each shift supervisor and the Facility's Environmental Manager.

3.     The plan represents good management practice designed to prevent and respond to spills of oil and petroleum substances.  The provisions of the plan include:

    a.     Containment for bulk storage tanks.  Most tanks have dikes providing containment for 110% of the volume of the tank.  Those that do not, and certain transformer reservoirs are contained through diversion of spills to the facility's drainage system.

    b.     Potential for spills is minimized through engineering controls and regular inspections.

    c.     The plan describes the Facility, its corrective action capability and adjacent receiving waters, and provides design information regarding the containment and diversionary systems for containing oil spills.

    d.      The plan describes the containment and diversionary structures in place to control oil spills; the tanks and associated piping used for oil service; and bulk fuel unloading facilities.

    e.     The plan designates Facility and Emergency Coordinators, and describes required security measures.

    f.     The plan sets out in detail spill scenarios and typical control techniques:

        i.     A background section describes the oils used at the facility and their methods of receiving, storage locations and planned uses.

        ii.     The plan describes, for each type of oil, the specific, potential sources for spills and the paths such spilled oil would take.

        iii.     The plan delineates the specific steps that should be taken whenever a spill occurs.

        iv.     The plan prescribes monitoring record keeping and measuring requirements.

    g.     The plan lists spill control equipment and describes the location at which that

equipment is kept.

h.      The plan describes emergency notification and incident investigation requirements.

i.      The plan specifies the criteria that must be met before normal operations may resume.

j.      The plan requires training and drills for all employees who may be required to participate in spill response.

k.      The plan describes inspection procedures.

4.    The plan has an appendix that specifies for each oil tank its content and capacity, the containment and diversion provided, spill prevention measures, and potential actions should the oil leak outside containment structures.

**Appendix O – PVC Solids Management Plan: Non-confidential Summary.**

1.     This plan governs the storage, handling and disposal of various types of solid PVC materials at the Facility.

2.     The plan defines the materials that are properly characterized as "PVC solids."

3.     The plan specifies how these PVC solids will be properly stored, managed and handled. It also requires an inventory control system for these materials, limits the amounts that can be stored at the Facility, and specifies criteria under which the PVC solids must be characterized and managed in accordance with the Waste Analysis and Management Plan (Appendix E).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,         )
                                       )
        Plaintiff,             )
                                       )
        and                  )
                                     )
STATE OF DELAWARE,            )
                                     )
        Plaintiff/Intervener,     )
                                     ) Civil Action No. _____
       v.                  )
                                     )
FORMOSA PLASTICS CORPORATION,   )
     DELAWARE,            )
                                     )
        Defendant.          )

## ORDER

UPON CONSIDERATION of Plaintiff, United States of America, and Defendant's, Formosa Plastics Corporation, Delaware ("Formosa") (collectively "Movants"), Motion to File under Seal Certain Consent Decree Appendices, the reasons stated therein, the lack of any opposition thereto, and the entire record herein,  it is the \_\_\_\_ day of _____, 2005 hereby

ORDERED that the Movants' motion should be and it hereby is granted; and it is,

FURTHER ORDERED that Appendices A, C, E, F, G, H, I, J, L and O to the Consent Decree filed by the Movants on June 28, 2005, contain nonpublic, confidential, proprietary, and/or commercially sensitive information that, if disclosed, would work a clearly defined and serious injury to Formosa's competitive interests; and it is,

FURTHER ORDERED that the redacted portions of Appendices A, C, E, F, G, H, I, J, L

and O shall be filed and kept under seal.


UNITED STATES DISTRICT JUDGE